IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GREGORY LOUIS HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 01-JEO-3200-E |
| ) | |
| CALHOUN COUNTY DRUG TASK FORCE ) | |
| OFFICERS JOHNNY SLOAN and JAY ) | |
| WIGLEY, ) | |
| ) | |
| Defendants. ) | |

FILED
03 MAY 21 AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**ENTERED**

**MAY 21 2003**

## MEMORANDUM OPINION

This matter is before the court for decision on the merits following a non-jury trial on May 7, 2003. After consideration of the testimony, exhibits, and arguments of the parties, the court finds that judgment is due to be entered in favor of the defendants and against the plaintiff.

### PROCEDURAL BACKGROUND

The plaintiff, Gregory Louis Hunter (hereinafter "Hunter" or "the plaintiff"), is an inmate in the Alabama penal system presently incarcerated at the Saint Clair Correctional Facility. He filed the present action pursuant to 42 U.S.C. § 1983. He alleges that the defendants, Calhoun County Drug Task Force Officers Johnny Sloan and Jay Wigley (hereinafter "Sloan" and "Wigley") violated his constitutional right to be free of cruel and unusual punishment when they physically assaulted him when they attempted to arrest him on September 27, 2001. As compensation for the alleged constitutional violations, the plaintiff seeks one million dollars, and the return of confiscated property. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct.

1737, 114 L. Ed. 2d 194 (1991).

The court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report addressing the factual allegations in the plaintiff's complaint. (Doc. 7). The defendants filed a special report, which the court considered as a motion for summary judgment. (Doc. 13). The plaintiff filed a response to the defendants' motion for summary judgment. (Doc. 15). The undersigned recommended that the motion for summary judgment be denied on the excessive force claim. (Doc. 18). United States District Judge U.W. Clemon adopted the report and recommendation and denied the motion. (Doc. 19).

On March 13, 2002, a jury found plaintiff guilty of third degree escape based on the incident. (Doc. 13, Wigley Affidavit).

The defendants filed an answer to the complaint. (Doc. 20). A pretrial conference was conducted in this matter. The parties consented to the jurisdiction of the undersigned to try this matter without a jury.[1] (Doc. 24).

## DISCUSSION

### The Evidence

#### The plaintiff's testimony

The plaintiff testified that on September 27, 2001, he and Vashad Young drove to a local store. (Tr. at 18, 29).[2] After Young returned to the car, the plaintiff pulled out on to the highway. (*Id.*). He was pulled over by the defendants. (*Id.* at 18). Wigley approached his side

---

[1] *See* 28 U.S.C. § 636(c)(1).

[2] The transcript is located at document 28 in the record.

2

of the car and asked the plaintiff to get out. (*Id*. at 18, 30). He did so. (*Id*. at 34). While he was at the rear of the car, Sloan told him to shut the "'F' up before [he] hit [him] across [the] F–ing head." (*Id*. at 18, 34). He then stated that he was struck by Sloan with a flashlight in the head. He identified the photographs that were taken that night. He stated that they accurately depict his injuries. (Tr. at 22-23; Plaintiff's Ex. 1 & 2). Thereafter, he fled because he was fearful of additional reprisals. He went to his sister's home where he remained until the next morning when he went to the hospital in Talladega. (*Id*. at 19-20, 37). When hospital personnel told him they were going to contact the police, he left. (*Id*. at 20). He went to his mother's house until officers broke into the house. (*Id*. at 42-43). He again fled. He made arrangements with an attorney to turn himself in to the authorities. (*Id*. at 20). When he went to the jail, they sent him to the local hospital for treatment. (*Id*. at 20, 24). He received treatment for a scalp laceration and a facial contusion around 6:00 p.m. He was released approximately two hours later to police custody. (*Id*. at 25, 39).

### The testimony of Vashad Young

Vashad Young was with the plaintiff at the time of the stop. They had gone to the store for Young to get some cigarettes. (*Id*. at 67). He was a passenger in the car when the plaintiff was stopped. He stated that the officers flashed their lights and the plaintiff stopped. (*Id*. at 55). Sloan approached his side of the car while Wigley went to the plaintiff's side. Young stated that he saw Wigley grab the plaintiff and forcibly remove him from the car. (*Id*. at 51, 57-59). Hunter was taken to the back of the car where he (Young) saw Sloan strike the plaintiff in the head with a flashlight. (*Id*. at 52, 60). When the plaintiff broke loose and ran, the officers went after him. (*Id*. at 53-54). When they could not catch Hunter, the officers headed back to the car.

(*Id.* at 54, 62). At that juncture, Young decided it was in his best interest to run as well. (*Id.*).

### The testimony of Jay Wigley

Defendant Jay Wigley testified that he has been an investigator in the District Attorney's Office for Calhoun County for the last two years. (*Id.* at 72). On September 27, 2001, he observed the plaintiff outside a store while he (Wigley) was in his undercover vehicle, a F-150 Ford pickup. (*Id.* at 73-74). Wigley had an outstanding arrest warrant for the plaintiff on the charge of second degree assault. (*Id.* at 73). Upon observing the plaintiff, he turned around to go back to where he initially saw him. By that time, the plaintiff was in his car and traveling down the street.

Wigley got behind the car the plaintiff was driving and flashed his lights, including the traditional police blue light on the front of the vehicle and his alternating lights on the front of the truck. (*Id.* at 74). The plaintiff stopped his vehicle. The officers approached the car on both sides. Wigley was on the driver's side where the plaintiff was and Sloan was on the passenger's side where Young was seated. Wigley asked the plaintiff to get out of the car, which he did. (*Id.* at 74-75). Wigley led him to the back of the car and talked with him. The plaintiff was seated on the back of the car talking with Wigley about the passenger in the car (Young) and was eating potato chips for a portion of their conversation. (*Id.* at 75). Wigley informed the plaintiff that he had a warrant for his arrest and that he was under arrest. (*Id.* at 76). The plaintiff then "started thrashing up and down and pulling away." (*Id.* at 77). Wigley and Sloan tried to restrain the plaintiff without success. (*Id.*). Wigley stumbled and fell to the ground. (*Id.* at 76). The plaintiff fell over the car door and ran off. (*Id.* at 79-80).

### The testimony of Johnny Sloan

Johnny Sloan is a seven year, veteran police officer. (*Id.* at 85). Sloan's testimony was consistent with Wigley's. They made the stop. The plaintiff exited the car and walked to the back where he talked with Wigley. Wigley attempted to arrest the plaintiff. (*Id.* at 86). Wigley and Hunter began to struggle after he (Hunter) was told he was going to be arrested and he began looking in Young's direction. (*Id.* at 86-87). Sloan told Hunter to stop resisting. He was thrashing around and resisting Wigley's efforts. Sloan told the passenger to stay inside the vehicle. (*Id.* at 89). Sloan went to assist Wigley when he observed him struggling. The plaintiff broke loose. (*Id.*). Sloan ran after the plaintiff but lost sight of him. (*Id.* at 90).

Sloan stated that not only did he not hit the plaintiff with a flashlight, he did not take it out of his pocket. (*Id.* at 91-92).

### The testimony of Terry Haney

Terry Haney, an Oxford, Alabama police officer, testified that on September 28, 2001, he went to the residence where the plaintiff was living to execute an escape arrest warrant. (*Id.* at 98). He talked with the plaintiff's mother and uncle who stated that he was not there. (*Id.*). He then began a search for the plaintiff. (*Id.* at 99). As he began, he heard a noise that directed his attention to a bedroom. When he entered the room, he saw someone jumping out the window. (*Id.*). He ran to the window and saw the plaintiff about twenty feet below on the ground. (*Id.*).

The plaintiff got up and ran off. (*Id.*). Haney informed the other officers of his observations, but they were not able to locate Hunter.

### The testimony of Emma Ann Cooley

Emma Ann Cooley, the plaintiff's mother, testified that she saw him on the night of

September 27, 2001, at her daughter's residence. (*Id.* at 112). When she saw him at about 8:00-8:45 p.m., his head was bloody and he was incoherent. (*Id.*). She also testified that she was arrested the next day on the street. She was not in her residence when the police arrived. (*Id.* at 113). She had been there earlier. She stated that her brother was in the residence but the plaintiff was not. She pled guilty to the related charge of interfering with an arrest premised on the advice of counsel. (*Id.* at 115).

## Controlling Legal Principles

In determining whether excessive force was used by an arresting officer, a court must apply a Fourth Amendment analysis, concentrating on whether the challenged use of force was reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The standard requires a court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. This objective test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.[3]

---

[3] In the early review of this case, the undersigned erroneously reviewed the plaintiff's claim as though it was being advanced under the Eighth Amendment. The court notes that applying the correct Fourth Amendment considerations, the result would have been the same. A trial was necessary to resolve the relevant factual disputes.

**Analysis**

The evidence adduced at trial requires this court to make credibility choices between two divergent positions. The plaintiff and Young claim that the plaintiff was struck by Sloan with a flashlight without any justification; the defendants assert that the plaintiff was resisting their lawful attempt to arrest him. Additionally, they assert that the plaintiff was never struck with a flashlight. This court must now resolve these disputes.

In examining the issues, the court has evaluated the traditional credibility considerations, including the demeanor of each witness, the bias or interest in the outcome of this litigation of each witness, the witnesses' recollection of events, and any inconsistencies. After consideration of all the evidence, the court finds that the plaintiff has not satisfied his burden of proving his claim by a preponderance of the evidence for various reasons. Because of the significance of each reason, they will be addressed individually.

First, the court finds that the plaintiff's testimony was not credible in many respects. He asserts that he did nothing to warrant the injury sustained. The court, however, finds the testimony of the officers credible in that he resisted their efforts. In view of his resistance, their continued efforts to control him by grabbing his arms and wrists were reasonable and appropriate. Their efforts were complicated by the fact that Young was a passenger and needed to be watched to ensure the safety of the officers. The plaintiff's recall of the events most likely is inimically affected by the fact that at some point during the altercation or afterwards he struck his head, resulting in the confusion he and his mother talked about. However, this is insufficient for this court to conclude that the evidence is adequate to support his claim that Sloan unjustifiedly struck him with a flashlight. In sum, the court finds that the plaintiff's resistance

and attempt to evade apprehension precipitated the permissible response by the defendants at the car.

Second, the court does not find the testimony of Young to be credible in the least. He stated that Wigley pulled the plaintiff out of the car. This testimony is inconsistent with the testimony of the plaintiff, as well as the defendants. Additionally, the court does not find his statement that he saw Sloan vigorously strike the plaintiff with the flashlight at the rear of the car by looking into the rearview mirror worthy of belief. At best, his rendition of the altercation is an exaggeration of the events.

Third, the plaintiff's overall conduct is consistent with an individual attempting to evade arrest. He left the hospital when he learned the police were going to be called. He jumped out a bedroom window when officers attempted to arrest him at the residence.

Although the plaintiff's injuries were significant, the evidence does not satisfy the court that they were the result of the use of excessive force. To the contrary, the credible evidence shows that the defendants' actions were "'objectively reasonable' in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397.

## CONCLUSION

The plaintiff has the burden of proof and he has failed to convince the court that either defendant exerted excessive force under the circumstances.[4] Judgment is therefore due to be entered in favor of the defendants. An order consistent with this court's findings will be entered.

---

[4] Following the hearing, the plaintiff submitted additional correspondence stating that he was experiencing headaches and that the prison is not providing adequate medical care. This matter is outside the scope of the original complaint. If the plaintiff feels that the prison officials are being deliberately indifferent to his medical needs, he may file a separate complaint for the court's consideration. To the extent he has attached what appears to be notes from his criminal defense counsel, the court finds that they are untimely offered and contain inadmissible hearsay. Therefore, they may not be considered. Even if they were considered, they would not alter the court's findings and conclusion in this matter

The Clerk is **DIRECTED** to serve a copy of this memorandum opinion upon the plaintiff and upon counsel for the defendants.

**DONE**, this the 21ST day of May, 2003.

／s／
**JOHN E. OTT**
United States Magistrate Judge